### GEORGE CROUCH v. THE STATE.

#### No. 4224. Decided February 5, 1908.

**1.—Theft—Sufficiency of Evidence.**

See opinion for evidence held to be sufficient to sustain a conviction for the theft of a gun.

**2.—Same—Ownership—Charge of Court.**

Where upon trial for theft the evidence showed that the alleged stolen property belonged to the party alleged as the owner, and that his son temporarily used it, the court correctly refused a charge that the ownership was proved to be in the son and to acquit the defendant.

Appeal from the County Court of Kaufman. Tried below before the Hon. Thos. R. Bond.

Appeal from a conviction of theft under the value of $50; penalty, a fine of $10 and thirty days confinement in the county jail.

The opinion states the case.

*A. U. Puckitt,* for appellant.—On question of insufficiency of evidence: Martinez v. State, 16 Texas Crim. App., 122; Warren v. State, 17 Texas Crim. App., 207.

*F. J. McCord,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted for the theft of a gun. Briefly, the facts show that L. C. Springer, and his

461 .]   CROUCH v. THE STATE.      461

father, B. Springer, with the brothers of L. C. Springer, and a cousin, went to Lander's Lake on a fishing excursion, and carried a single-barreled shotgun with them belonging to the father, B. Springer. That L. C. Springer took the gun while en route and shot a rabbit to be used as bait in fishing. After reaching the lake they left the gun on a log, and near the gun some of the crowd left their shoes, fishing hooks and lines and the dead rabbit, and went down the lake to get a boat, and in going down they passed appellant, who was going in the direction of where they left the gun, and was at the time about one hundred yards distant from the gun. After being gone a short while they returned and the gun was gone, and they did not see the gun any more until they recovered it from appellant some two or three weeks afterward.

This theft should have occurred about the 29th day of September. About the fifteenth of the next month the witness Aslin went with B. Springer to appellant's home, and told him (appellant) they were going hunting and wanted to borrow a gun; that appellant reached under the bed and pulled out a double-barreled shotgun, and the witness Aslin states that he saw under the bed a single-barrel shotgun, which he reached down and secured, and requested appellant to loan them that gun, and appellant said to them they could take it if they would take good care of it, inquiring as to when they would return. They replied they would return the following Tuesday. Witness and B. Springer started away with the gun, and appellant followed them to the fence and said, "Take good care of my gun and be certain to bring it back." This gun was recognized by Springer as his gun he had lost at the lake. Upon cross-examination this witness admitted that they were not going hunting, but made the statement to appellant in order to get the gun. That neither himself nor Springer said anything to appellant about the loss of Springer's gun, nor did Springer tell appellant after he saw the gun that it was his, nor at any time ask appellant where he got it, nor did he make any statement to appellant in regard to having lost the gun. They did not go hunting, but on the contrary went to Terrell the following morning, a distance of about eight miles, and secured a warrant for appellant's arrest. B. Springer testified, substantially, as did the other witness, to the ownership of the gun, and as did L. C. Springer in regard to their going to the lake fishing, etc.

Appellant introduced J. T. Johnson and son, a boy about 18 years of age, who both swore that in October prior to appellant's arrest he came to the house of Johnson in a wagon with his wife; that witness lives about five miles east of town and appellant eight miles west; that appellant had with him a single-barrel shotgun, and informed them that he had found it at Lander's Lake; that he at first thought it was a gun owned by the Peevy boys, but found it was not; that witness and son thought the gun was the property of another party, and appellant asked them to inquire in regard to it, and signified his readiness to return the gun. That appellant came to his house in the daytime, and must have passed through the City of Terrell. That appellant made no effort to

conceal the gun at witness' house.  Miss Peevy testified that some time in September appellant came to her and told her he had found her brother's gun at the lake, and she informed him that the gun found was not her brother's; that she lived about two miles from appellant near Lander's Lake, and that this inquiry was made a day or two, or very shortly after appellant claimed to have found the gun.  Miss Peevy was the niece of appellant's wife.

Mrs. McGaffy testified that she was the step-daughter of the defendant, and that when Aslin and Springer came to appellant's house and borrowed the gun, she was a member of appellant's family, but had married since.  That she was in the room when Aslin and Springer said they wanted to go hunting, and borrowed the gun.  Appellant always kept his gun under the bed; that he reached under the bed and pulled out his own double-barreled shotgun, and a single-barreled shotgun which he also had under the bed, and which appellant claimed to have found at Lander's Lake, and that appellant had never claimed the gun except as one he had found, and was keeping it for the owner; that appellant further remarked to Springer and Aslin that the double-barreled shotgun was out of order, but they could take the single-barreled gun if they would take good care of it, and that appellant and not Aslin got the gun from under the bed.

Appellant testified in his own behalf that he and a boy named Webb went to Lander's Lake, and found the gun in question on a log; that the Peevy boys had told him they were coming down to the lake the night before to fish, and he (appellant) thought the gun belonged to one of the Peevy boys who owned a gun just like it, and he carried the gun home. That the Webb boy picked up a small worn-out knife; that he had used every effort to find the boy Webb, and had process issued for him, but had been unable to find him.  The remainder of his testimony is about as was the witnesses Johnson and Miss Peevy.  In addition to the knife and gun taken, Springer and crowd also left some hooks and lines and two pair of shoes, and two knives at the log, and on their return they found everything as they had left them except the gun and knives were missing.  This is practically the case on the facts.

The court charged the jury in regard to the definition of theft, fraudulent taking, and applied the law to the facts authorizing a conviction if the jury found that the property was taken with fraudulent intent, etc.

At the request of appellant the jury were further instructed: "In this case the intent is the gist of the offense, and the intent must exist at the time of the taking.  If the intent to steal did not exist at the time of the taking, no subsequent felonious taking will render the previous taking felonious.  If therefore the evidence in this case fails to show beyond a reasonable doubt that at the time defendant obtained possession of the gun in this case he at once intended to deprive the owner of the value thereof and to appropriate the same to his own use and benefit, you will acquit the defendant."

The court further instructed the jury, as follows: "If the jury believe from the evidence that the defendant at the time he took possession

of the gun charged to have been stolen, thought that the gun was lost by the owner and intended at the time he took said gun to return it to the true owner, or if you have a reasonable doubt as to whether he so thought or a reasonable doubt whether at the time of the taking he entertained a fraudulent intent to appropriate it to his own use and deprive the true owner of the value thereof, then in either such case the defendant would not be guilty and you will acquit him."

We believe the general charge and the charges given at the request of appellant sufficiently presented the merits of the case on the facts for the consideration of the jury.

A further charge was asked and refused, as follows: "In this case the facts proven show that the gun in controversy at the time of the taking by defendant was in the possession of L. C. Springer and not the owner, B. Springer, and you will return a verdict of not guilty." We are of opinion the court correctly refused this charge. The gun belonged to B. Springer, L. C. Springer was his son; they were going fishing together, and the gun was with them; and when the rabbit was discovered, L. C. Springer, with permission of his father, took the gun and shot the rabbit. They then went on to the lake, and left the gun with the other things mentioned at the log when they went down the lake to secure a boat. The ownership was clearly in B. Springer and not in his son, L. C. Springer.

A further charge was asked, as follows: "If the property came into the possession of the defendant by lawful means, the subsequent appropriation of it is not theft, and you will acquit the defendant unless it was obtained by false pretext, or with the intent to deprive the owner of the value thereof and appropriate the property to the use and benefit of the person taking." This charge was refused, and we see no such error in the court refusing same as would require a reversal of the judgment. The essence of this charge and the principle involved in it had been sufficiently given in the two charges above quoted as requested by appellant.

We are of opinion there is sufficient evidence to justify the jury in arriving at the conclusion they did. In this connection, it might perhaps be well enough to state that appellant, so far as the record goes, mentioned the gun matter to the two Johnsons and only to those witnesses who testified in his behalf, and there was no evidence showing that anybody else was at the lake except the Springers, and the crowd that were there with them fishing. The fact that the shoes and all of those things were at the log at the time, and having met the Springers in the condition they were in at the time, rebuts the defensive theory that the gun belonged to Peevy.

The judgment is affirmed.

*Affirmed.*